*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LINDA SUE WARREN,

Defendant-Appellant.

UNPUBLISHED
June 12, 2026
10:57 AM

No. 374000
Berrien Circuit Court
LC No. 2024-000020-FH

Before: WALLACE, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right from her jury-trial conviction of assaulting, resisting, or obstructing a police officer, MCL 750.81d(1). Defendant was sentenced to 60 days in jail, with credit for 20 days served. On appeal, defendant argues (1) the evidence was insufficient to convict her because no juror could find beyond a reasonable doubt that the police chief lawfully entered defendant's home; (2) trial counsel was ineffective for failing to request a jury instruction explaining the common-law right to resist an unlawful arrest; (3) the trial court erred when it assessed five points to OV 1 based on its finding defendant threatened the process server; and (4) this Court should remand for ministerial correction of the judgment of sentence. We affirm defendant's conviction and sentence, but remand solely for the administrative task of correcting defendant's Sentencing Information Report (SIR).

## I. FACTS

In January 2024, process server, Tom Fuller,[1] attempted to serve defendant with "a request and order of eviction after conditional dismissal" at her mobile home. Defendant lived in the home for about 10 years, and as of January of 2024 was living there alone with her two dogs. Neither Fuller nor the onsite park manager, Lorna Horton, could confirm the reason for defendant's

---

[1] At the time of trial, Fuller testified that he was a part-time member of the civil division of the sheriff's department and that the job consisted of serving civil process and court ordered evictions.

eviction. At trial, defendant indicated she was in court previously regarding a problem with her dogs and believed the eviction "evolved from" that issue.

Defendant invited Fuller inside because of the weather. Fuller testified that defendant closed the door behind him, but he reopened it because it was very dark in the mobile home, while defendant testified the door remained open. When Fuller confronted her with the eviction order, defendant stated: "Possession is 99 percent ownership." Fuller explained he was there to help her collect her personal belongings when defendant began calling Fuller the devil, held a cross in his face, and "threw the bible up in [his] face." She was "screaming at the top of her lungs, to the point where it was almost incoherent." Fuller recalled defendant saying: "[I]f I had a gun, I would shoot you, and I'm going to sic my dog on you." Defendant then went to the kitchen area where she was not visible to Fuller, and he was uncertain what she might have when she returned. Fuller determined he needed assistance and contacted his office to request that they call the police.[2]

Defendant denied screaming at or threatening Fuller, claiming he "got all wound up" while she tried to explain she owned the trailer and paid lot rent.[3] She then claimed she "very politely" asked Fuller to leave. Defendant acknowledged she got upset when Fuller would not leave and was frightened when she heard Fuller call for assistance.

Three Oaks Police Chief Carl Krause responded to the call. While on his way, dispatch informed Chief Krause there was an active arrest warrant for defendant. He arrived in a police vehicle and was wearing his police uniform, including a body camera. On arrival, Chief Krause confirmed the eviction order was signed by a judge. He indicated the outer door of the mobile home was open, Fuller was standing in the doorway, the manager of the mobile home park was standing outside, and defendant was standing in her living room. Chief Krause explained that he entered because he was notified of the threat and intended to take her into custody as authorized by the arrest warrant.

When Chief Krause entered the doorway, defendant quickly headed to a back room. Defendant's testimony confirms that she was familiar with Chief Krause and recognized him as a law-enforcement official. Chief Krause pushed the door to the back room open, and a struggle with defendant ensued. He told defendant she was under arrest several times, but her noncompliance continued. Defendant was holding a bible, her cellular telephone, and one other item[4] in her hands. Chief Krause indicated she was "actively" hitting him on the arm, "[n]ot hard," but hard enough that he said "ow" at one point, which is audible in the body camera footage. Fuller went to the back room to assist in restraining defendant, because "she absolutely was failing to

---

[2] Fuller mentioned the eviction order does not authorize him to physically remove people. If a tenant refuses to leave, they are considered trespassers and Fuller must call law enforcement for assistance.

[3] Fuller had a request and order of eviction after conditional dismissal with him at the mobile home and advised Chief Krause that he was evicting defendant that day. Further, Fuller reported that it was likely the park's management would put defendant's belongings out for 24 hours and defendant would likely be charged with trespassing if she returned to the trailer.

[4] Chief Krause indicated the third item was a cross, but defendant testified the item was a pillow.

comply and—and assaultive to the chief."[5]  Defendant denied fighting with or hitting either man; instead, she claimed they were hitting her.  After Chief Krause stated he did not want to fight with or taser defendant, she stopped resisting, was placed in handcuffs, and was escorted to Chief Krause's patrol vehicle.  Defendant was charged with assaulting, resisting, or obstructing a police officer.

At trial, the body camera video was played and defendant asserted it had been altered.  The jury requested to view the footage several additional times during deliberations and returned with a guilty verdict soon after the video was replayed.

At sentencing, the parties agreed to assess five points to Prior Record Variable (PRV) 5 because defendant was on bond for similar conduct in Indiana.[6]  Defense counsel objected to assessing five points to Offense Variable (OV) 1 because defendant denied threatening Fuller, but the trial court declined to reduce the points.  It explained that OVs are assessed on a preponderance of the evidence standard, and the evidence clearly established the threat was made.  The resulting minimum sentencing guidelines range was zero to 11 months, and defendant was sentenced to 60 days in jail with credit for 20 days served.  The original judgment of sentence erroneously indicated defendant was sentenced to 60 months' imprisonment.  The clerical error was corrected before the defendant's claim of appeal was filed.

## II.  DISCUSSION

## A.  SUFFICIENCY OF THE EVIDENCE

Defendant argues the evidence was insufficient to sustain her conviction because no juror could reasonably find Chief Krause entered the mobile home lawfully.  We disagree.

This Court reviews a lower court's determination whether the evidence was sufficient to support a conviction de novo.  *People v Prude*, 513 Mich 377, 384; 15 NW3d 249 (2024).  Evidence is reviewed in a light most favorable to the prosecution " 'to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt.' "  *Id*. at 385, quoting *People v Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020).  Under this standard of review, deference is given to the jury on questions of fact, and a reviewing court must " 'draw all reasonable inferences and make credibility choices in support of the jury verdict.' "  *Prude*, 513 Mich at 385, quoting *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018).  " 'Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.' "  *Oros*, 502 Mich at 239, quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).  All evidentiary conflicts must be resolved in the prosecution's favor.  *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016).

Defendant also challenges the legality of police conduct.  Our Supreme Court has explained:

---

[5] Defendant also may have attempted to bite Fuller.

[6] Assessing five points to PRV 5 was an error and is discussed below.

[W]hen the lawfulness of police action is an element of a criminal offense, a court reviewing a challenge to the sufficiency of the evidence supporting a conviction must view the facts in the light most favorable to the prosecution and then determine whether, as a matter of law, an officer's actions were "lawful" in light of those facts. Under this test, a conviction will be overturned only when an officer's conduct cannot be reasonably perceived as lawful when viewed under a lens sufficiently deferential to that conduct. [*Prude*, 513 Mich at 386.]

Finally, this Court reviews a statute's interpretation and application de novo. *People v Moreno*, 491 Mich 38, 44; 814 NW2d 624 (2012).

"[A] conviction that is not supported by sufficient evidence to prove guilt beyond a reasonable doubt violates due process and cannot stand." *Prude*, 513 Mich at 384. "The elements of resisting or obstructing a police officer under MCL 750.81d(1) are: '(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties.' " *People v Quinn*, 305 Mich App 484, 491; 853 NW2d 383 (2014), quoting *People v Corr*, 287 Mich App 499, 503; 788 NW2d 860 (2010). MCL 750.81d(7)(a) defines "obstruct" to include "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command."

In addition, "the prosecution must establish that the officers acted lawfully as an actual element of the crime of resisting or obstructing a police officer under MCL 750.81d." *Quinn*, 305 Mich App at 492. Accordingly, if the evidence does not, viewed in a light most favorable to the prosecution, establish beyond a reasonable doubt (1) defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered Chief Krause, (2) when defendant knew or had reason to know Chief Krause was a police officer performing his duties, and (3) Chief Krause was acting lawfully, her conviction cannot be sustained. See *Prude*, 513 Mich at 384. If Chief Krause was acting unlawfully, defendant had a common-law right to resist using reasonable force. *Moreno*, 491 Mich at 47, 49; *People v Nordstrom*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket No. 375550); slip op at 5. When lawfulness is an element of a criminal offense, as it is here, the jury acts as the fact-finder but "the court remains the ultimate arbiter of whether, under a particular set of facts, police actions were lawful." *Prude*, 513 Mich at 386.

Defendant challenges the lawfulness of Chief Krause's actions. She relies on the Fourth

-4-

Amendment's protection of privacy in the home. US Const, Am IV. She also relies on MCL 764.21, which delineates the right to break open an outer or inner door when making an arrest in Michigan.[7] Defendant contends MCL 764.21 required Chief Krause to announce his purpose and be refused admittance before breaking open an inner or outer door. As the prosecutor points out: "No one testified that Chief Krause broke open an outer door of a building to get inside the trailer. Even Defendant admitted that the trailer door was open." The prosecution contends MCL 764.21 does not apply, although this argument focuses on the outer door.

All witnesses agree the entry door was open, so MCL 764.21 is inapplicable with respect to the outer door. Chief Krause entered the front door and attempted to tell defendant she was under arrest when she quickly headed to a back room. The witnesses agree defendant attempted to close the inner door, but was unsuccessful in doing so. These facts contradict defendant's argument that the inside door was unlawfully broken down. Fuller confirmed defendant was not complying with Chief Krause's requests. Defendant could not remember whether Chief Krause told her to stop and denied that he ever said she was under arrest. But the body camera footage (including audio) demonstrates that, as Chief Krause entered the residence, defendant retreated to the back room. Chief Krause followed and told defendant to "come here," to which she loudly responded "Get away from me!" After Chief Krause reached defendant and began attempting to restrain her, he told her multiple times that she was under arrest, yet she continued to struggle.[8] Chief Krause testified he "pushed the door open" with both hands as it was being shut in front of him. Overall, the testimony in this case demonstrates Chief Krause entered the mobile home lawfully in his police uniform and attempted to tell defendant that she was under arrest when she quickly walked to the back of the trailer and attempted, but failed, to close the inner door. The witness testimony does not support the conclusion the door was broken open; it suggests the door was pushed open while Chief Krause was advising her that she was under arrest and defendant was resisting and failing to comply. Accordingly, defendant's argument that Chief Krause's entry was unlawful under MCL 764.21 fails.

The prosecutor argues Chief Krause was carrying out an active arrest warrant and did not violate the Fourth Amendment by entering an open door to effectuate defendant's arrest. In *Payton v New York*, 445 US 573, 603; 100 S Ct 1371; 63 L Ed 2d 639 (1980), the United States Supreme Court held "for Fourth Amendment purposes, an arrest warrant founded on probable cause

---

[7] MCL 764.21 states:

> A private person, when making an arrest for a felony committed in his or her presence, or a peace officer or federal law enforcement officer, *when making an arrest with a warrant* or when making a felony arrest without a warrant as authorized by law, *may break open an inner or outer door* of a building in which the person to be arrested is located or is reasonably believed to be located *if, after announcing his or her purpose, he or she is refused admittance.* [Emphasis added.]

[8] As Chief Krause enters the open door of defendant's residence, he appears to start to tell defendant that she is under arrest, saying "Linda, you're under . . . ." He does not complete the sentence, presumably because defendant is very loudly yelling at him as she retreats from him to the back room.

implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."[9] In *People v Oliver*, 417 Mich 366, 376; 338 NW2d 167 (1983), our Supreme Court noted an arrest warrant is required before police can enter a suspect's home to carry out the arrest, absent exigent circumstances.

Chief Krause was notified of the arrest warrant on his way to defendant's home. Defendant argues: "The only evidence of the existence of any valid warrant for [defendant] was Chief Krause's claim that he was told there was one." The jury was free to find his testimony credible. *People v Ventour*, 349 Mich App 417, 428; 27 NW3d 660 (2023) ("The jury was free to accept or reject the theory of either party in light of the evidence presented at trial, and this Court will not interfere with the jury's role of determining issues of weight and credibility"). The warrant authorized Chief Krause to enter defendant's home to effectuate her arrest if he had reason to believe she was present. *Payton*, 445 US at 603. Under MCL 764.18, "it shall not be necessary for the arresting officer personally to have the warrant in his [or her] possession but such officer must, if possible, inform the person arrested that there is a warrant for his arrest and, after the arrest is made, shall show such person said warrant if required, as soon as practicable." Chief Krause saw defendant standing inside her living room when he arrived. As noted in *Prude*, 513 Mich at 386, when an element of the offense is lawfulness, the jury acts as fact-finder but the trial court "remains the ultimate arbiter of whether, under a particular set of facts, police actions were lawful." Here, the evidence was sufficient to support the conclusion that Chief Krause's conduct was lawful.

In sum, defendant's argument that the evidence was insufficient to find Chief Krause acted lawfully and, consequently, insufficient to satisfy the third element of defendant's resisting and obstructing offense, is unavailing. The plain meaning of MCL 764.21 suggests it is applicable only when a door is broken down, which did not occur in this case. Defendant's constitutional rights were not violated because the active arrest warrant for defendant authorized Chief Krause to enter the mobile home.

## B.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends trial counsel was ineffective for failing to request a jury instruction informing the jury of the common-law right to resist an unlawful arrest. We disagree.

In general, "[t]he question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Defendant, however, did not preserve her ineffective assistance of counsel

---

[9] We note that *Payton* referenced a felony arrest warrant. While the record in the present case does not clearly indicate the nature of the warrant, the video suggests that it may have been issued for defendant's alleged failure to appear at a hearing for a local ordinance violation. But we will not address that matter because defendant has not briefed the issue of whether the nature of the warrant had any legal effect on Chief Krause's entry into the premises, and because, as described in this opinion, Chief Krause entered while defendant was being evicted and he did not break down the door, i.e., he walked through the open door while Fuller was legally evicting defendant.

argument by moving in the trial court for a new trial or evidentiary hearing, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), or moving to remand for a *Ginther*[10] hearing with this Court, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Because the issue is unpreserved, "this Court's review is limited to mistakes apparent from the record." *Heft*, 299 Mich App at 80.

To establish trial counsel was ineffective and obtain a new trial, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. Regarding counsel's performance, "a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id*. at 52.

A defendant is entitled to a properly instructed jury "so that the jury may correctly and intelligently decide the case." *People v Urbanski*, 348 Mich App 90, 99-100; 17 NW3d 430 (2023), quoting *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018). While the jury instructions must not exclude defenses or theories supported by the evidence, "it is improper for a court to give instructions regarding a theory that is not supported by the evidence." *Urbanski*, 348 Mich App at 100.

Defendant asserts her counsel's failure to request an instruction informing the jury of the common-law right to resist an unlawful arrest rendered his performance objectively unreasonable, and it is reasonably likely this omission was prejudicial. In *Moreno*, our Supreme Court determined MCL 750.81d did not abrogate the common-law right to resist an unlawful arrest. *Moreno*, 491 Mich at 49. The common-law right permits an individual to " 'use such reasonable force as is necessary to prevent an illegal attachment and to resist an illegal arrest,' and that 'the basis for such preventive or resistive action is the illegality of an officer's action, to which [a] defendant immediately reacts.' " *Id*. at 47, quoting *People v Krum*, 374 Mich 356, 361; 132 NW2d 69 (1965).

The prosecutor argues the instruction was inapplicable because Chief Krause was lawfully carrying out an active arrest warrant. Defense counsel appeared to acknowledge this fact in closing argument, when he stated: "The issue is whether or not [defendant] struck [Chief Krause], she didn't, and he gave a lawful command." Defense counsel's strategy did not center on the legality of Chief Krause's conduct; rather, it focused on whether the evidence proved beyond reasonable

---

[10] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

doubt that defendant struck Chief Krause or knowingly resisted arrest.[11] Defense counsel was not unreasonable in pursuing a strategy aligning with the evidence, which demonstrated there was an active warrant for defendant's arrest. The body camera footage does not clearly show defendant striking Chief Krause. Accordingly, defense counsel's argument centered on what the body camera footage did not show, along with defendant's state of mind, challenging satisfaction of the first element of the offense. Defense counsel's strategy appears to have been consistent with the evidence presented, and while it was ultimately unsuccessful, an unsuccessful trial strategy does not constitute ineffective assistance of counsel. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).

Defendant has failed to overcome the presumption trial counsel's performance was objectively reasonable. *Trakhtenberg*, 493 Mich at 52. This Court need not address whether defendant was prejudiced by the omission of the jury instruction.

## C. SENTENCING ISSUES

### 1. PRESERVATION AND STANDARD OF REVIEW

Defendant objected to assigning five points to OV 1 at sentencing, preserving the issue for appellate review. *People v Clark*, 315 Mich App 219, 223; 888 NW2d 309 (2016); MCR 6.429(C). Defendant did not raise any challenge regarding the PRV clerical error reflected on defendant's SIR or the clerical error on her judgment of sentence "at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals," so these issues are unpreserved. *Clark*, 315 Mich App at 223; MCR 6.429(C).

When a defendant challenges the sentencing guideline calculation used by the trial court,

[the trial court's] factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate

---

[11] Defense counsel stated in closing, after the body camera footage was replayed by the prosecutor:

I don't see [defendant] striking the chief. I don't see Chief Krause being struck by—by [defendant], or by any object that she was holding. In fact, the video is— as she described during her testimony, the video supports that. That she's clutching her bible.

* * *

[Defendant is] a frightened, frightened person. She claims during her testimony that she doesn't remember what happened. She doesn't remember hearing Chief Krause give her a command. She doesn't remember Chief Krause ever showing her a warrant. She doesn't remember Mr. Fuller ever showing her eviction papers.

court reviews de novo. [*People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016), quoting *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), superseded in part by statute on other grounds as stated by *People v Rodriguez*, 327 Mich App 573, 579 n 3; 935 NW2d 51 (2019).]

Defendant's unpreserved arguments relating to clerical errors are reviewed for plain error affecting substantial rights. *Clark*, 315 Mich App at 224. Under that standard, "[r]elief is available only when (1) an error occurred, (2) the error was plain, meaning clear or obvious, and (3) the plain error affected substantial rights, meaning it affected the outcome of the proceedings." *Id.*, citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

## 2. PRIOR RECORD AND OFFENSE VARIABLES

The prosecutor and defendant agree that the trial court erroneously assessed five points to OV 1, and this error changed defendant's minimum sentencing guidelines range from zero to 11 months to zero to nine months. Defendant also argues the five points assessed to PRV 5 should have been assessed to PRV 6. We agree, but because defendant has served her sentence, we remand only for the ministerial task of correcting defendant's SIR.

In cases involving a scoring error that alters the applicable sentencing guidelines range, a defendant is typically entitled to be resentenced according to accurate information. *People v Francisco*, 474 Mich 82, 89-90; 711 NW2d 44 (2006). However, "[a]n issue is moot when an event occurs that renders it impossible for the reviewing court to fashion a remedy to the controversy." *People v Cathey*, 261 Mich App 506, 510; 681 NW2d 661 (2004). Courts generally do not decide moot issues. *People v Richmond*, 486 Mich 29, 34; 782 NW2d 187 (2010). If an issue will continue to affect a party in a collateral way it is not deemed moot. *Cathey*, 261 Mich App at 510, citing *In re Dodge Estate*, 162 Mich App 573, 583-584; 413 NW2d 449 (1987). This Court has repeatedly declined to review sentencing errors in cases where the defendant already served their sentence. *People v Tombs*, 260 Mich App 201, 220; 679 NW2d 77 (2003). See also *People v Rutherford*, 208 Mich App 198, 204; 526 NW2d 620 (1994); *People v Wogaman*, 133 Mich App 823, 828; 350 NW2d 816 (1984). This Court can, however, remand for correction of the SIR. *People v Harmon*, 248 Mich App 522, 534; 640 NW2d 314 (2001). See also *People v Bailey*, 330 Mich App 41, 63; 944 NW2d 370 (2019).

The prosecutor and defendant agree that five points were erroneously assessed to OV 1, and defendant's total OV score should have been 15 points rather than 20, reducing her minimum sentencing guidelines range from zero to 11 months to zero to nine months. Under *People v McGraw*, 484 Mich 120; 771 NW2d 655 (2009), the trial court erred in assessing five points to OV 1 based on defendant's threats to shoot Fuller. In *McGraw*, our Supreme Court stated: "Offense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable." *Id.* at 133. "OV 1 is an 'offense-specific' variable" and "in scoring OV 1, the trial court [is] limited to 'considering the sentencing offense alone.' " *People v Chelmicki*, 305 Mich App 58, 72; 850 NW2d 612 (2014), quoting *McGraw*, 484 Mich at 127. "[A]ll of 'defendant's conduct during' that offense" may be properly considered by the trial court. *Chelmicki*, 305 Mich App at 72, quoting *McGraw*, 484 Mich at 134.

MCL 777.31(1)(e) states OV 1 is assessed points for "aggravated use of a weapon" when "[a] weapon was displayed or implied." Defendant denies threatening Fuller with a gun, but Fuller testified that the threat prompted him to have the police called. While her conduct regarding Fuller precipitated the sentencing offense, defendant was not charged with any offense against Fuller. Defendant's sentence relates to her conviction of resisting and obstructing Chief Krause. Accordingly, the trial court erred when it assessed five points to OV 1 based on defendant's threatening Fuller with an implied weapon.[12] The error resulted in a higher ceiling of 11 months rather than nine months but did not affect the floor of the guidelines range.

Defendant also notes her PRV total was corrected from zero to five points at sentencing because she was on bond for similar conduct in Indiana. The prosecution's brief on appeal acknowledges that this change was for PRV 6, and that it indicated as much in an email to the court and defense counsel before sentencing. Defendant points out the trial court erroneously assessed the five points to PRV 5, MCL 777.55 (prior misdemeanor convictions or prior misdemeanor juvenile adjudications), rather than PRV 6, MCL 777.56 (relationship to the criminal justice system). Under MCL 777.56(1)(d), PRV 6 is assigned five points when a defendant is on bond awaiting adjudication or sentencing for a misdemeanor. At the sentencing hearing, the prosecution requested the PRV be increased to 5 based upon her being on bond for an Indiana misdemeanor charge. The PSIR reflects that defendant was on bond for a misdemeanor in Indiana and she did not object to the five-point change. The trial court erred when it assigned the five points to PRV 5 on defendant's SIR, when the parties were actually discussing assigning five points to PRV 6 (although this error had no material effect on her sentencing range).

Defendant is correct in asserting errors regarding OV 1 and PRV 5. Typically, defendant would be entitled to resentencing. *Francisco*, 474 Mich at 89-90. Defendant, however, has served the 60-day sentence imposed in July 2024. That sentence was at the low end of the applicable minimum guidelines range of zero to nine months. Defendant requests resentencing but has not identified any collateral consequences with continuing effects. *Cathey*, 261 Mich App at 510. Accordingly, this Court cannot fashion a remedy at this time other than remanding, solely for the ministerial task of correcting the SIR. *Harmon*, 248 Mich App at 534.

### 3. CLERICAL ERROR

Defendant also argues her judgment of sentence should be amended to reflect the proper term of her sentence. An amendment was completed before defendant filed a claim of appeal, so this issue is moot.

When a defendant has already received the relief requested, the corresponding issue is rendered moot. *People v Billings*, 283 Mich App 538, 548; 770 NW2d 893 (2009). In *Billings*, the defendant moved in the trial court for resentencing while her appeal was pending, making the same argument about improper OV scoring in the trial court and on appeal. The trial court granted

---

[12] While Fuller testified at some point in the trial that defendant said she would shoot Fuller *if* she had a gun, which is a statement that *does not* imply a weapon, later in his testimony Fuller said that defendant threatened to shoot him.

the motion, and this Court concluded: "Because defendant has already received the relief that she requested, this issue is moot." *Id*.

As the record demonstrates defendant's judgment of sentence was amended to reflect the correct sentence of 60 days in jail rather than 60 months' imprisonment, defendant has received the requested relief, rendering the issue moot. *Richmond*, 486 Mich at 34.

## III.  CONCLUSION

For the reasons above, we affirm defendant's conviction and sentence, and remand solely for the ministerial task of correcting defendant's SIR.  We do not retain jurisdiction.

/s/ Randy J. Wallace
/s/ Anica Letica
/s/ Kathleen A. Feeney